IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HOME-OWNERS INSURANCE COMPANY and OWNERS INSURANCE COMPANY, | |
| Plaintiffs, | Civil Action File No. |
| v. | _____ |
| TL WILLIAMS & ASSOCIATES, INC; AW ARIA, LLC; ASHTON ATLANTA RESIDENTIAL, LLC; and JASON PULLMAN, | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

**COME NOW** Home-Owners Insurance Company ("Home-Owners") and Owners Insurance Company ("Owners") and hereby files their Complaint for Declaratory Judgment against TL Williams & Associates, Inc. ("TL Williams"), AW Aria, LLC ("Aria"), Ashton Atlanta Residential, LLC ("Ashton"), and Jason Pullman ("Pullman"), showing this Honorable Court as follows:

## PARTIES

### 1.

Home-Owners is a corporation organized and existing under the laws of the State of Michigan with its principal place of business in Michigan.

### 2.

Owners is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Michigan.

### 3.

TL Williams is a corporation organized and existing under the laws of the State of Georgia with its principal place of business in Georgia.

### 4.

Aria is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Georgia. Aria's sole member is Ashton Atlanta Residential, LLC, whose members' domicile is alleged in Paragraph 5, *infra*.

### 5.

Ashton is a limited liability company organized under the laws of the State of Georgia with its principal place of business in Georgia. Ashton has the following

members: Little Shots Nevada, L.L.C., Elly Reisman, Norman Reisman, Bruce Freeman, Seymour Joffe, Harry Rosenbaum, and Joseph Beard. Member Little Shots Nevada, L.L.C. is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Nevada, and its membership consists of Bruce Freeman, Seymour Joffe, and Harry Rosenbaum. Members Elly Reisman, Norman Reisman, Bruce Freeman, Seymour Joffe, and Harry Rosenbaum are individuals who reside and are domiciled in Canada and such persons have the present intention to remain in Canada. Member Joseph Beard is an individual who resides and is domiciled in the State of Texas, and he has the present intention to remain in Texas.

6.

Jason Pullman ("Pullman") is an individual who resides and is domiciled in the State of Georgia, and he has the present intention to remain in Georgia.

## **JURISDICTION AND VENUE**

7.

This Court has original jurisdiction over this action under the provisions of 28 U.S.C. § 1332 because this action is between citizens of different states, who are

completely diverse, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8.

This Court has personal jurisdiction over the Defendants because the circumstances that underlie this coverage action occurred in Fulton County, Georgia, which lies within this judicial district and division of the Court, and all Defendants are physically present therein.

9.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## **NATURE OF ACTION**

10.

This is a Complaint for Declaratory Judgment, brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, to declare the rights and other legal relations surrounding questions of actual controversy that presently exist between Home-Owners, Owners, and the Defendants.

11.

A controversy of a judicial nature presently exists among the parties that demands a declaration by this Court in order that Home-Owners and Owners may have their rights and duties under the relevant contracts of insurance determined and avoid the possible accrual of damages.

12.

Each Defendant named herein has been joined in compliance with case law requiring the insurer seeking a declaratory judgment to bring into the action all individuals or entities that have a financial or other interest in the outcome of the coverage issues to be decided through the declaratory judgment.

## **UNDERLYING FACTS**

13.

This action involves the alleged defective construction of a dwelling located at 6723 Encore Boulevard, Sandy Springs, Georgia 30328 (the "Dwelling").

14.

The Dwelling was constructed by Aria and Ashton (together, "Ashton Builders").

- 5 -

15.

On or about December 13, 2016, Ashton Builders subcontracted some of the work at the Dwelling to TL Williams, a masonry contractor, via an independent contractor agreement.

16.

On July 17, 2017, Ashton Builders entered into a Purchase and Sale Agreement with Pullman regarding the Dwelling.

17.

On January 24, 2019, the Dwelling's warranty deed was recorded and title to the Dwelling was transferred to Pullman.

18.

On or about June 28, 2020, Pullman issued a demand to Ashton Builders to have the sale of the Dwelling rescinded (the "Demand").

19.

Since June 28, 2020, Pullman has amended his Demand to assert a claim for damages.

20.

Pullman's Demand alleges that Ashton Builders and/or TL Williams defectively constructed the Dwelling or portions thereof.

21.

Pullman's Demand alleges that the Dwelling's construction contained "numerous" deficiencies, including, but not limited to, water intrusion entry points and damage to improvements at the Dwelling caused by water infiltration.

22.

Pullman's Demand also alleges that Ashton Builders were "already aware of the issues of water infiltration, and despite [their] placement of fans, dehumidifiers and scrubber[s] throughout the [Dwelling], [they] ha[ve] failed to remedy the[] intrusions."

23.

Pullman further alleges that water has been infiltrating "for over an extended period of time," and that he "permitted [Ashton Builders] to inspect the [Dwelling] and to conduct [their] own investigation."

- 7 -

24.

Pullman also alleges that Ashton Builders knew of the Dwelling's defects but "intentionally covered up and concealed [those] defects" from him.

25.

At or around the time the Dwelling was transferred to Pullman, but months before the Demand issued, Ashton Builders were aware of the circumstances underlying Pullman's Demand.

26.

At or around the time the Dwelling was transferred to Pullman, but months before the Demand issued, TL Williams was aware of the circumstances underlying Pullman's Demand.

27.

The entirety of the damage alleged by Pullman and concerning the Dwelling falls within the scope of Ashton Builders' work at the Dwelling.

28.

The entirety of the damage alleged by Pullman and concerning the Dwelling falls within the scope of TL Williams' work at the Dwelling.

29.

There exist other demands, notices, summonses or other legal papers in connection with the circumstances underlying Pullman's Demand that Ashton Builders have not provided to or did not immediately provide to Home-Owners and/or Owners.

30.

There exist other demands, notices, summonses or other legal papers in connection with the circumstances underlying Pullman's Demand that TL Williams has not provided to or did not immediately provide to Home-Owners and/or Owners.

31.

Ashton Builders have attempted to remedy, voluntarily and without notice to or the consent of either Home-Owners or Owners, the circumstances underlying Pullman's Demand.

32.

TL Williams has attempted to remedy, voluntarily and without notice to or the consent of either Home-Owners or Owners, the allegations circumstances Pullman's Demand.

## <u>RESERVATION OF RIGHTS</u>

33.

After receiving notice of Pullman's Demand, Home-Owners and Owners issued letters to TL Williams and Ashton Builders, wherein Home-Owners and Owners provided notice of their reservation of rights to disclaim any obligation under the insurance policies issued by them and to TL Williams and to assert the defense of non-coverage. True and accurate copies of the relevant reservation of rights letters are attached hereto as **Exhibit A**.

34.

After receiving notice of Pullman's Demand, and after issuing the reservation of rights letters, Home-Owners and Owners retained counsel to defend TL Williams and Ashton Builders' interests against Pullman's Demand, subject to the complete reservation of rights.

35.

On or about March 19, 2021, Home-Owners and Owners received notice of TL Williams' objection to the reservation of rights letter issued to it. A true and accurate copy of TL Williams' objection is attached hereto as **Exhibit B**.

36.

For the reasons set forth in the reservation of rights letters and below, however, the insurance policies issued by Home-Owners and Owners to TL Williams afford no coverage for the claims and damages alleged by Pullman's Demand and, therefore, Home-Owners and Owners have no duty to defend or indemnify either TL Williams or Ashton Builders against the Pullman Demand or any liability lawsuit that may arise from the allegations alleged therein.

## THE INSURANCE CONTRACTS

37.

Home-Owners Insurance Company issued a commercial general liability insurance policy to TL Williams & Associates, policy number 144618-80720728, with an effective term of February 1, 2020 to February 1, 2021 (the "Primary Policy"). A true and accurate copy of the Primary Policy is attached hereto as **Exhibit C**.

38.

The Primary Policy contains the following relevant terms, provisions, exclusions, and conditions:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

.   .   .

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance. The word "insured" means any person or organization qualifying as such under Section II — Who Is An Insured. . . .

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement.**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory[.]"

.   .   .

**c.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim: . . .

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

.   .   .

## 2.   Exclusions

This insurance does not apply to:

.   .   .

## b.   Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. . . .

.   .   .

**j.**    **Damage To Property**

"Property damage" to: . . .

**(2)**    Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

.   .   .

**(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

.   .   .

**k.**    **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.**    **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard".

**m.**    **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

- 14 -

    **(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

. . .

## SECTION II – WHO IS AN INSURED

**1.**    If you are designated in the Declarations as:

. . .

    **d.**    An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

. . .

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

. . .

**2.**    **Duties In The Event Of Occurrence , Offense, Claim Or Suit**

    **a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.

. . .

    **b.**    If a claim is made or "suit" is brought against any insured, you must:

.   .   .

    **(2)**    Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**    You and any other involved insured must:

    **(1)**    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

.   .   .

**d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

.   .   .

**3.**    **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.**    To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.**    To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or

- 16 -

that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

.   .   .

## SECTION V – DEFINITIONS

.   .   .

**8.**     "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.**     It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.**     You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

.   .   .

**13.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

.   .   .

**21.**     "Your product"

    **a.**     Means:

        **(1)**     Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

- 17 -

**(a)**     You; . . .

**b.**     Includes:

**(1)**     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)**     The providing of or failure to provide warnings or instructions.

.   .   .

**22.**     "Your work"

**a.**     Means:

**(1)**     Work or operations performed by you or on your behalf; and

**(2)**     Materials, parts or equipment furnished in connection with such work or operations.

**b.**     Includes:

**(1)**     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)**     The providing of or failure to provide warnings or instructions.

.   .   .

## BLANKET ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.    Under **SECTION II - WHO IS AN INSURED** is amended. The following provision is added. A person or organization is an Additional Insured, only with respect to liability caused, in whole or in part, by "your work" for that Additional Insured by or for you:

    **1.**    If required in a written contract or agreement; or

    **2.**    If required by an oral contract or agreement only if a Certificate of Insurance was issued prior to the loss indicating that the person or organization was an Additional Insured.

.   .   .

## COMMERCIAL GENERAL LIABILITY PLUS COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

.   .   .

**5.**    **BROADENED KNOWLEDGE OF OCCURRENCE SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** is amended. The following condition is added:

    **a.**    Paragraphs a. and b. of this condition will not serve to deny any claim for failure to provide us with notice as soon as practicable after an "occurrence" or an offense which may result in a claim:

- 19 -

    (1)    If the notice of a new claim is given to your "employee"; and

    (2)    That "employee" fails to provide us with notice as soon as practicable.

**b.**    This exception shall not apply:

    **(1)**    To you; or

    **(2)**    To any officer, director, partner, risk manager or insurance manager of yours.

.  .  .  .

39.

Owners Insurance Company issued a commercial umbrella insurance policy to TL Williams & Associates, policy number 49-720-728-01, with an effective term of February 1, 2020 to February 1, 2021 (the "Umbrella Policy"). A true and accurate copy of the Umbrella Policy is attached hereto as **Exhibit D**.

40.

The Umbrella Policy contains the following relevant terms, provisions, exclusions, and conditions:

**COMMERCIAL UMBRELLA POLICY**

.  .  .

- 20 -

## DEFINITIONS

To understand this policy, **you** must understand what **we** mean when **we** use these words and phrases. They appear in bold-faced print in this section and wherever used in the policy.

.   .   .

F.    **Executive officer** means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

.   .   .

I.    **Incident** means either an occurrence or an offense, whichever is the basis of coverage, then:

    1.    When coverage applies on an occurrence basis, **incident** means an accident with respect to: . . .

        b.    **Property damage**

    including continuous or repeated exposure to substantially the same general harmful conditions. Continuous or repeated exposure to substantially the same general harmful conditions constitutes one incident.

.   .   .

J.    **Insured** means the person(s) or organizations qualifying as such under the **PERSONS AND ORGANIZATIONS INSURED** section of this policy.

.   .   .

- 21 -

**EE.** **Your product** means:

**1.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**a.** **You**;

.   .   .

**2.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your product** includes warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of any of the items included in **1.** and **2.** immediately above.

**Your product** also includes the providing of or failure to provide warnings or instructions relative to any of the items in **1.** or **2.** immediately above.

.   .   .

**FF.** **Your work** means:

**1.** Work or operations performed by **you** or on **your** behalf; and

**2.** Materials, parts or equipment furnished in connection with such work or operations.

**Your work** includes warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of any of the items included in **1.** or **2.** immediately above.

**Your work** also includes the providing of or failure to provide warnings or instructions relative to any of the items included in **1.** or **2.** immediately above.

## COVERAGE

**A.** **We** will pay those sums included in the **ultimate net loss** that the **insured** becomes legally obligated to pay as damages because of:

.   .   .

    **2.** **Property damage;**

.   .   .

to which this insurance applies caused by an **incident**.

.   .   .

## EXCLUSIONS

This policy does not apply to:

.   .   .

**M.** **Bodily injury** or **property damage** expected or intended from the standpoint of the insured. . . .

.   .   .

**Q.** **Bodily injury** or **property damage** for which the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement. . . .

.   .   .

**Y.** **Property damage** to:

.   .   .

     **6.**      That particular part of real property on which any **insured** or any contractor or subcontractor working directly or indirectly on **your** behalf are performing operations, if **property damage** arises out of those operations; or

     **7.**      That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

.   .   .

**Z.**    **Property damage** to **your product** arising out of it or any part of it.

**AA.**    **Property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

**BB.**    **Property damage** to **impaired property** or property that has not been physically injured, arising out of:

     **1.**      A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**;

     **2.**      A delay or failure by **you** or anyone acting on **your** behalf to perform a contract or agreement in accordance with its terms.

.   .   .

## PERSONS AND ORGANIZATIONS INSURED

Each of the following is an **insured** under this policy to the extent described below:

- 24 -

.  .  .

**E.**     If **you** are designated in the Declarations as an organization other than a partnership, joint venture or limited liability company:

    **1.**     **You** are an **insured**; and

    **2.**     Any organization **you** newly acquire or form, other than a partnership, joint venture or limited liability company, and over which **you** maintain ownership or majority interest, will qualify as an **insured** if there is no other similar insurance available to that organization. . . .

.  .  .

**I.**     Subject to the terms and conditions of this insurance, any other **insured(s)** included in the **scheduled underlying insurance** issued to **you** and shown in the Declarations, but only to the extent that insurance is provided for such other **insured(s)** in the **scheduled underlying insurance**.

.  .  .

## CONDITIONS

This policy is subject to the following conditions:

.  .  .

**F.**     **Legal Action Against Us**

**We** may not be sued unless:

    **1.**     There is full compliance with all terms of this policy; . . .

.  .  .

**H.**     **Notice of Incident, Claim or Suit**

  **1.**     When an **incident** likely to involve **us** takes place, the **insured** must notify **us** in writing as soon as practicable, of any **incident**, claim or suit. Notice of an **incident** is not notice of a claim.

.   .   .

  **2.**     If claim is made or **suit** is brought, **we** must be advised promptly. All papers in connection with claims or **suits** must be sent to **us** without delay**.**

  **3.**     The **insured** must:

       **a.**     Immediately send **us** copies of any correspondence, demands, notices, summonses or papers in connection with any claim or **suit**; .   .   .

.   .   .

  The **insured** must not, except at the **insured's** own cost, voluntarily make any payment, assume any obligation or incur any expense.

.   .   .   .

## DECLARATORY JUDGMENT

### COUNT I
**(Against TL Williams and Ashton Builders)**
**HOME-OWNERS AND OWNERS WERE NOT GIVEN TIMELY NOTICE OF THE OCCURRENCE AND, THUS, THEY HAVE NO DUTY TO DEFEND OR INDEMNIFY TL WILLIAMS OR ASHTON BUILDERS AGAINST THE PULLMAN DEMAND.**

41.

Home-Owners and Owners repeat and reallege the foregoing paragraphs as if fully set forth herein.

42.

The Primary Policy and Umbrella Policy issued by Home-Owners and Owners, respectively, require their insureds to perform certain conditions precedent in the event of an "occurrence."

43.

Specifically, as a condition precedent to coverage under the Primary Policy, TL Williams and Ashton Builders were required to notify Home-Owners "as soon as practicable" of an "occurrence" that may result in a claim.

44.

Moreover, as a condition precedent to coverage under the Umbrella Policy, TL Williams and Ashton Builders were required to notify Owners "as soon as practicable" of an "incident" that is likely to involve Owners.

45.

The circumstances underlying Pullman's Demand constituted an "occurrence" under the policies.

46.

TL Williams and Ashton Builders were aware of the circumstances underlying Pullman's Demand as early as the date the Dwelling was transferred to Pullman, but at least months before his Demand issued.

47.

However, notice of the circumstances underlying Pullman's Demand was not provided to Home-Owners or Owners until July 31, 2020.

48.

Accordingly, notice to Home-Owners and Owners of the circumstances underlying Pullman's Demand was delayed unreasonably as a matter of law.

49.

Neither TL Williams nor Ashton Builders have a sufficient legal justification for failing to notify Home-Owners or Owners of the circumstances underlying Pullman's Demand "as soon as practicable" after learning of the same.

50.

By failing to notify Home-Owners and Owners "as soon as practicable" of the circumstances underlying Pullman's Demand, TL Williams and Ashton Builders breached a condition precedent to coverage set forth in the both the Primary Policy and the Umbrella Policy.

51.

Consequently, because TL Williams and Ashton Builders breached a condition precedent to coverage under both the Primary Policy and Umbrella Policy, neither Home-Owners nor Owners have a duty to defend or indemnify TL Williams or Ashton Builders in connection with Pullman's Demand.

52.

Home-Owners and Owners are, therefore, entitled to a declaratory judgment that they are not under a duty to defend or indemnify TL Williams and Ashton

Builders against any liability, judgment, or settlement resulting from the Pullman Demand.

**COUNT II**
**(Against TL Williams and Ashton Builders)**
**HOME-OWNERS AND OWNERS WERE NOT GIVEN TIMELY NOTICE OF THE CLAIM OR ALL LEGAL CORRESPONDENCE IN CONNECTION WITH PULLMAN'S DEMAND AND, THUS, THEY HAVE NO DUTY TO DEFEND OR INDEMNIFY TL WILLIAMS OR ASHTON <u>BUILDERS AGAINST PULLMAN'S DEMAND.</u>**

53.

Home-Owners and Owners repeat and reallege the foregoing paragraphs as if fully set forth herein.

54.

The Primary Policy and Umbrella Policy issued by Home-Owners and Owners, respectively, require their insureds to perform certain conditions precedent in the event of a claim, or a "suit."

55.

Specifically, as a condition precedent to coverage under the Primary Policy, TL Williams and Ashton Builders were required to notify Home-Owners with written notice of a claim or "suit" "as soon as practicable."

56.

Further, as a condition precedent to coverage under the Umbrella Policy, TL Williams and Ashton Builders were required to notify Owners with notice of a claim or "suit" "promptly."

57.

Moreover, TL Williams and Ashton Builders were to ensure that Home-Owners and Owners were served with and/or notified "immediately" of any correspondence, demands, notices, summonses, papers, or legal papers received in connection with a claim or "suit."

58.

The allegations underlying Pullman's Demand constituted a "claim" under the policies.

59.

TL Williams and Ashton Builders were aware of the allegations underlying Pullman's Demand as early as the date the Dwelling was transferred to Pullman, but at least months before his Demand issued.

60.

In addition, there exist additional correspondence, demands, notices, summonses, papers, or legal papers received by TL Williams and/or Ashton Builders in connection with Pullman's Demand, either before or after it issued, that have not been provided to Home-Owners or Owners "immediately," as the respective policies dictate.

61.

Notice of the allegations underlying Pullman's Demand was not provided to Home-Owners or Owners until July 31, 2020.

62.

Notice of additional allegations underlying Pullman's Demand made since July 31, 2020 have been sporadic and incomplete.

63.

Accordingly, notice to Home-Owners and Owners of the allegations underlying Pullman's Demand was and is delayed unreasonably as a matter of law.

64.

Moreover, TL Williams and Ashton Builders failed and continue to fail to serve or notify Home-Owners and Owners "immediately" concerning additional

correspondence, demands, notices, summonses, papers, or legal papers received by them in connection with Pullman's Demand.

65.

Neither TL Williams nor Ashton Builders have a sufficient legal justification for failing to notify Home-Owners or Owners of the allegations underlying Pullman's Demand.

66.

Neither TL Williams nor Ashton Builders have a sufficient legal justification for failing to immediately serve or notify Home-Owners and Owners of all correspondence, demands, notices, summonses, papers, or legal papers received by them in connection with Pullman's Demand.

67.

By failing to notify Home-Owners with written notice of the allegations underlying Pullman's Demand as soon as practicable, TL Williams and Ashton Builders breached a condition precedent to coverage set forth in the Primary Policy.

68.

By failing to notify Owners with prompt notice of the allegations underlying Pullman's Demand, TL Williams and Ashton Builders breached a condition precedent to coverage set forth in the Umbrella Policy.

69.

By failing to immediately serve or notify Home-Owners and Owners with all correspondence, demands, notices, summonses, papers, or legal papers received by them in connection with Pullman's Demand, TL Williams and Ashton Builders breached a condition precedent to coverage set forth in both the Primary Policy and Umbrella Policy.

70.

Consequently, because TL Williams and Ashton Builders breached a condition precedent to coverage under both the Primary Policy and Umbrella Policy, neither Home-Owners nor Owners have a duty to defend or indemnify TL Williams or Ashton Builders in connection with Pullman's Demand.

71.

Home-Owners and Owners are, therefore, entitled to a declaratory judgment that they are not under a duty to defend or indemnify TL Williams and Ashton

Builders against any liability, judgment, or settlement resulting from the Pullman Demand.

**COUNT III**
**(Against TL Williams and Ashton Builders)**
**NEITHER TL WILLIAMS NOR ASHTON BUILDERS ARE ENTITLED TO REIMBURSEMENT UNDER THE PRIMARY POLICY OR THE UMBRELLA POLICY FOR ANY PAYMENTS, EXPENSES, OR COSTS <ins>INCURRED BY THEM VOLUNTARILY AND WITHOUT CONSENT</ins>**

72.

Home-Owners and Owners repeat and reallege the foregoing paragraphs as if fully set forth herein.

73.

Both the Primary Policy and Umbrella Policy unambiguously exclude from coverage any reimbursement for payments, expenses, or costs voluntarily incurred or assumed by any insured and without the consent of Home-Owners and/or Owners.

74.

TL Williams and/or Ashton Builders voluntarily incurred or assumed, without Home-Owners or Owners' consent, payments, expenses, or costs associated with repairing or otherwise addressing the defective work at the Dwelling.

75.

TL Williams and/or Ashton Builders seek reimbursement for payments, expenses, or costs voluntarily incurred or assumed by them and without the consent of Home-Owners and/or Owners.

76.

However, both the Primary Policy and Umbrella Policy unambiguously exclude coverage for TL Williams and/or Ashton Builders' claims for reimbursement related to payments, expenses, or costs voluntarily incurred or assumed by them and without the consent of Home-Owners and/or Owners.

77.

Because TL Williams and/or Ashton Builders seek reimbursement for payments, expenses, or costs voluntarily incurred or assumed by them without the consent of Home-Owners and/or Owners, Home-Owners and Owners are entitled to a declaratory judgment that they are not obligated to reimburse TL Williams and/or Ashton Builders for such payments, expenses, and costs under the policies.

**COUNT IV**
**(Against TL Williams and Ashton Builders)**
**THE PULLMAN DEMAND DOES NOT TRIGGER THE INSURING**
**AGREEMENTS OF THE PRIMARY POLICY OR THE UMBRELLA**
**POLICY BECAUSE IT DOES NOT ALLEGE "PROPERTY DAMAGE."**

78.

Home-Owners and Owners repeat and reallege the foregoing paragraphs as if fully set forth herein.

79.

The insuring agreements contained in the Primary Policy and Umbrella Policy issued by Home-Owners and Owners, respectively, are triggered only if the allegations contained in the Pullman Demand allege "property damage" caused by an "occurrence" to which each policy applies.

80.

However, the allegations in the Pullman Demand allege only that the work performed at the Dwelling by TL Williams and/or Ashton Builders, and falling within the "scope of work" of each, was performed defectively.

81.

Work that is performed defectively and within a contractor's "scope of work" does not constitute "property damage" under either the Primary Policy or the Umbrella Policy.

82.

Because the allegations in the Pullman Demand allege that the work performed at the Dwelling by TL Williams and/or Ashton Builders was performed defectively, and within the "scope of work" of each, the Pullman Demand does not allege "property damage" caused by an occurrence at the Dwelling.

83.

Consequently, because the Pullman Demand does not allege the occurrence of "property damage" at the Dwelling to which either the Primary Policy or Umbrella Policy apply, neither Home-Owners nor Owners have a duty to defend or indemnify any party to this lawsuit in connection with the Pullman Demand.

84.

Home-Owners and Owners are, therefore, entitled to a declaratory judgment that they are not under any duty to defend or indemnify any party to this lawsuit against any liability, judgment, or settlement resulting from the Pullman Demand.

**COUNT V**
**(Against TL Williams and Ashton Builders)**
**THE DAMAGES ALLEGED BY THE PULLMAN DEMAND ARE**
**EXCLUDED FROM COVERAGE BECAUSE ALL SUCH DAMAGES**
**FALL WITHIN THE POLICIES' BUSINESS RISK[1] EXCLUSIONS.**

85.

Home-Owners and Owners repeat and reallege the foregoing paragraphs as if fully set forth herein.

86.

The Primary Policy and Umbrella Policy issued by Home-Owners and Owners, respectively, each contain "business risk" exclusions, which unambiguously exclude from coverage any damages because of "property damage" resulting from defective construction or faulty workmanship that falls within TL Williams and/or Ashton Builders' "scope of work" at the Dwelling.

87.

The allegations in the Pullman Demand allege that the work performed at the Dwelling by TL Williams and/or Ashton Builders was performed defectively or constitutes faulty workmanship.

---

[1]   The "business risk" exclusions constitute the following: With respect to the Primary Policy, exclusions j(5), j(6), k, l, m(1), and m(2); With respect to the Umbrella Policy, exclusions Y(6), Y(7), Z, AA, BB(1), BB(2).

88.

The allegedly defective and/or faulty work performed at the Dwelling by TL Williams and/or Ashton Builders did not cause damage to any property falling outside of either entity's "scope of work" at the Dwelling.

89.

Because the allegations in the Pullman Demand allege that the work performed at the Dwelling by TL Williams and/or Ashton Builders caused damage only to property falling within each entity's "scope of work," and not to any property falling outside of either entity's "scope of work," such alleged damages are unambiguously excluded from coverage under both the Primary Policy and Umbrella Policy's "business risk" exclusions.

90.

Both Home-Owners and Owners are, therefore, entitled to a declaratory judgment that they are under no duty to defend or indemnify any party to this lawsuit against any liability, judgment, or settlement resulting from the Pullman Demand.

**COUNT VI**
**(Against Ashton Builders)**
**THE DAMAGES ALLEGED IN THE PULLMAN DEMAND ARE**
**UNAMBIGUOUSLY EXCLUDED FROM COVERAGE BECAUSE THEY**
**RESULT FROM AN EXPECTED OR INTENDED INJURY.**

91.

Home-Owners and Owners repeat and reallege the foregoing paragraphs as if fully set forth herein.

92.

The Primary Policy and Umbrella Policy issued by Home-Owners and Owners, respectively, unambiguously exclude from coverage any damages that result from an expected or intended injury.

93.

The allegations in the Pullman Demand allege that Pullman's damages result from and were caused by Ashton Builders' intentional concealment of and misrepresentations respecting the defective and/or faulty state of the Dwelling at the time of the Dwelling's sale and/or transfer.

94.

Damages which result from fraudulent concealment and/or misrepresentations are damages that are expected or intended to occur under the policies.

95.

Because the allegations in the Pullman Demand allege that his damages result from and were caused by Ashton Builders' intentional concealment and misrepresentations of the defective and/or faulty state of the Dwelling at the time of the Dwelling's sale and/or transfer, the Pullman Demand alleges damages that were expected or intended to occur by Ashton Builders.

96.

Consequently, because the Pullman Demand alleges damages that were expected or intended to occur by Ashton Builders, such alleged damages are unambiguously excluded from coverage under both the Primary Policy and the Umbrella Policy.

97.

Both Home-Owners and Owners are, therefore, entitled to a declaratory judgment that they are under no duty to defend or indemnify Ashton Builders against any liability, judgment, or settlement resulting from the Pullman Demand.

## COUNT VII
### (Against Ashton Builders)
### THE DAMAGES ALLEGED IN THE PULLMAN DEMAND ARE UNAMBIGUOUSLY EXCLUDED FROM COVERAGE UNDER THE POLICIES' CONTRACTUAL LIABILITY EXCLUSION.

98.

Home-Owners and Owners repeat and reallege the foregoing paragraphs as if fully set forth herein.

99.

The Primary Policy and Umbrella Policy issued by Home-Owners and Owners, respectively, unambiguously exclude from coverage any damages that an insured is obligated to pay by reason of the assumption of liability in a contract or agreement.

100.

The allegations in the Pullman Demand allege that Pullman's damages result from and were caused by Ashton Builders' defective and/or faulty workmanship at the Dwelling.

101.

Because the allegations in the Pullman Demand allege that his damages result from and were caused by Ashton Builders' defective and/or faulty workmanship at the Dwelling, and because the entirety of the Dwelling falls within Ashton Builders' contractual "scope of work" with Pullman, the Pullman Demand alleges damages that Ashton Builders are obligated to pay by reason of the assumption of liability in a contract or agreement.

102.

Consequently, because the Pullman Demand alleges damages that Ashton Builders are obligated to pay by reason of the assumption of liability in a contract or agreement, such alleged damages are unambiguously excluded from coverage under both the Primary Policy and the Umbrella Policy.

103.

Both Home-Owners and Owners are, therefore, entitled to a declaratory judgment that they are under no duty to defend or indemnify Ashton Builders against any liability, judgment, or settlement resulting from the Pullman Demand.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Home-Owners and Owners respectfully pray as follows:

(1)    that this Court declare that they do not owe any duties to defend or indemnify either TL Williams or Ashton Builders against the Pullman Demand or any liability lawsuit resulting therefrom;

(2)    that judgment be entered in Home-Owners and Owners' favor and against all Defendants;

(3)    that this Court bind each and every named party herein by said judgment;

(4)    that the Court award Home-Owners and Owners all costs, expenses, and attorneys' fees that it is entitled to receive under federal and/or state law; and

(5)    that this Court enter an order granting such other and further relief as justice requires.

This 30th day of April, 2021.

Respectfully submitted,

KENDALL | MANDELL, LLC


 /s/ M. Brandon Howard_____
Michael C. Kendall
Georgia Bar No. 414030
M. Brandon Howard
Georgia Bar No. 550524
*Attorneys for Home-Owners Ins. Co. and*
*Owners Ins. Co.*

3152 Golf Ridge Blvd., Suite 201
Douglasville, Georgia 30135
Telephone:   (770) 577-3559
Facsimile:    (770) 577-8113
mckendall@kendallmandell.com
mbhoward@kendallmandell.com